DAN SIEGEL, SBN 56400
KEVIN J. BRUNNER, SBN 271510
SONYA MEHTA, SBN 294411
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA  94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
danmsiegel@gmail.com
kevjbrunner@gmail.com
sonyamehta@siegelyee.com

Attorneys for Plaintiff
STACIE PLUMMER

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE PLUMMER, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | (Civil Rights) |
| CITY OF RICHMOND; BILL LINDSAY, LISA STEPHENSON, KATY CURL, and LESLIE KNIGHT in their official and individual capacities, and DOES 1 through 10, inclusive, | Demand for Jury Trial |
| Defendants. | |

Plaintiff STACIE PLUMMER complains against ddefendants CITY OF RICHMOND, BILL LINDSAY, LISA STEPHENSON, KATY CURL, LESLIE KNIGHT and DOES 1 through 10, inclusive, as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff Stacie Plummer is a Finance Manager for the City of Richmond's Library and Cultural Services Department.

---

*Plummer v. City of Richmond, et al.*, No.
Complaint – 1

2.      Ms. Plummer witnessed what she reasonably believed to be systemic corruption, gross mismanagement and waste, financial malfeasance, and abuse of authority by the highest City officials. She reported it to her superiors and to outside agencies. She refused to obey her superiors' orders to participate in, and not report, the apparent misconduct.

3.      Ms. Plummer reported what she reasonably believed to be improper charges to a federal grant, and theft of government monies through the use of CAL Cards. She reported defendant Leslie Knight's misuse of City vehicles, staff, and resources. She reported misconduct at the Library that appears to have cost the public books, materials, library budget funds, and threatened the loss of all federal funding for the City's libraries.

4.      Defendants have retaliated against Ms. Plummer because of her protected disclosures. Defendants have denied her promotions, docked her pay, transferred her several times, denied her leave benefits, assigned her excessive work, and offered her a promotion in exchange for her silence.

5.      Defendant Library Director Katy Curl ("Curl") removed all job duties from her, and froze her out of financial and programmatic information.

6.      Ms. Plummer brings a claim under 42 U.S.C. § 1983 for retaliation based upon protected First Amendment conduct. She also brings a claim for retaliation based upon protected whistleblower conduct under California Labor Code § 1102.5. She brings a claim under California Government Code § 53296, *et seq.* for retaliation in response to her filing a complaint alleging gross mismanagement, significant waste of funds, and an abuse of authority. She brings a claim under California Government Code § 12653, *et seq.* for retaliation where the City knew of Ms. Plummer's protected activities and

retaliated against her because of those activities.

## JURISDICTION

7. This action arises under 42 U.S.C. § 1983, to redress deprivations, under color of law, of the plaintiff's rights under the First Amendment of the United States Constitution. The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

8. The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

## VENUE

9. Venue is proper in the Northern District of California because the events or omissions giving rise to the claim occurred in this District.

## PARTIES

10. At all times relevant to this controversy, plaintiff STACIE PLUMMER was a Finance Manager and employee for the City of Richmond, and a resident of Richmond, and then Hercules, California.

11. At all times relevant to this controversy, defendant CITY OF RICHMOND was a public agency that governs the City of Richmond.

12. At all times relevant to this controversy, defendant BILL LINDSAY was the City Manager of the City of Richmond and was acting in said capacity. He is sued in his official and individual capacities.

13. At all times relevant to this controversy, defendant LISA STEPHENSON was Labor Relations Manager/Human Resources Personnel Officer and then Human Resources Director and was acting in said capacity. She is sued in her official and

*Plummer v. City of Richmond, et al.*, No.
Complaint – 3

individual capacities.

14. At all times relevant to this controversy, defendant KATY CURL was the Director of the Library of the City of Richmond and was acting in said capacity. She is sued in her official and individual capacities.

15. At all times relevant to this controversy, defendant LESLIE KNIGHT was the Human Resources Director and Assistant City Manager of the City of Richmond and was acting in said capacity. She is sued in her official and individual capacities.

16. Plaintiff STACIE PLUMMER is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and Ms. Plummer's injuries as herein alleged were proximately caused by the aforementioned defendants.

**STATEMENT OF FACTS**

17. Plaintiff Stacie Plummer was born, raised, and works in Richmond, California. She has been a hardworking and conscientious employee of the City of Richmond for 27 years, garnering excellent performance evaluations.

18. Since at least 2008, defendant former City Human Resources Director and Assistant City Manager Leslie Knight spent up to 30 percent of each work day running a personal business, using five City staff people to assemble trinkets in her City Hall office. She also used City vehicles while collecting a monthly City car allowance. Knight was the second highest in command in the City, second only to City Manager Bill Lindsay.

19. In October 2008, Knight asked Ms. Plummer to design marketing materials for Knight's business. Ms. Plummer refused. After her refusal, Knight changed Ms. Plummer's title, assigning her more work for the same pay.

20. From 2009-2011, in retaliation for Ms. Plummer's refusal to help Knight, Knight changed Ms. Plummer's position title four times, added the financial work of two extra departments to her job duties, with no additional pay, attempted to add a third extra department, and put Ms. Plummer on the layoff list.

21. In February 2010, Ms. Plummer was denied a promotion in spite of a recommendation from the outgoing Library Director, two outstanding performance evaluations, and a January 2010 evaluation concluding that Ms. Plummer's responsibilities were above her classification.

22. In December 2011, Ms. Plummer reported over email to her superior, Library Director Katy Curl, that she had concerns about what appeared to be false financial statements in a federal grant report from the Library to Portland State University. Ms. Plummer also reported her concerns to the Finance Department. The grant was to increase broadband services and digital literacy for Richmond's poor and low income residents.

23. In addition, Ms. Plummer reported over email to Curl that managers appeared to make improper charges on CAL Cards. The CAL card is a state-funded purchase card used to procure commodities and services for state and local agencies.

24. Following Ms. Plummer's disclosures, from December 2011 to March 2012, Ms. Plummer was again denied a promotion. Ms. Plummer continued to report on her concerns about federal grant and CAL card mismanagement.

25. On March 28, 2012, Knight and Stephenson agreed with Ms. Plummer's union representative Pam Covington to promote Ms. Plummer, but then withdrew it.

26. On August 24, 2012, Stephenson offered Ms. Plummer a promotion in exchange for her silence about apparent City misconduct. Ms. Plummer refused, and the promotion was denied.

27. On August 27, 2012, Ms. Plummer delivered to Lindsay a 212 page report of Knight's improper conduct; evidence of financial mismanagement of the Portland State University federal grant, approved by Curl; and improper use of the City's CAL Card.

28. On August 31, 2012, the Portland State University federal grant official contacted Curl to discuss the submitted grant report. Curl ordered Ms. Plummer to reply to the Portland State University federal grant official and justify false statements.

29. On September 2, 2012, Ms. Plummer refused over email to report what she reasonably believed was false information to the federal government, because she believed such an act was illegal.

30. In September 2012, Curl stopped directly communicating with Ms. Plummer, and removed Ms. Plummer's job duties until March 2014.

31. In September 2012, Ms. Plummer went to the Contra Costa Grand Jury and the Contra Costa District Attorney's Office to report what she reasonably believed to be misconduct by City officials.

32. In October 2012, Ms. Plummer found that other less qualified Finance employees had been promoted without review, while Ms. Plummer was again denied a promotion.

33. In October 2012, Curl admitted to the *Bay Citizen* newspaper that the Library could not account for about $57,000 that it claimed to provide through the Portland

State University federal grant.

34. In N0vember 2012, Ms. Plummer went to the Federal Bureau of Investigation ("FBI") and the California State Attorney General's Office to report on misconduct by City officials.

35. At this point, many of Ms. Plummer's fellow employees began to avoid her. However, a group of City employees supported Ms. Plummer. These employees have also apparently experienced retaliation, including termination, for whistle blowing. The highest officials of the City or Richmond, who have final policymaking authority under state law, appear to have taken action against employees that wrongfully deprived them of their free speech rights guaranteed under the US Constitution.

36. In January 2013, Lindsay issued Ms. Plummer a Letter of Reprimand for "insubordination" for refusing to legitimize mismanagement of the Portland State University federal grant.

37. In May of 2013, Knight resigned from her position, effective July 2013.

38. From the end of May 2013 to about October 2013, Ms. Plummer took a medically advised stress leave due to the continual retaliation. The City denied her the attendant salary and benefits to her accepted workers' compensation claim. Ms. Plummer was forced to use all her accrued leave, including vacation.

39. In September 2013, Ms. Plummer returned to work to find her pay was again docked. In addition, Curl continued to deny Ms. Plummer her job duties and financial operations information.

40. On September 27, 2013, Curl issued a Letter of Reprimand to Ms. Plummer, stating that Ms. Plummer's emails where she refused to justify financial misstatements in the grant reports were "unprofessional, disrespectful, and discourteous."

41. In October 2013, Curl revoked Ms. Plummer's ability to work from home on occasion as was the pattern and practice of the Library.

42. Also in October 2013, Curl refused Ms. Plummer a reasonable accommodation of temporarily providing a half day work schedule for Ms. Plummer's recovery from disability. Curl stated her intent to dock Ms. Plummer's pay, which the City Risk Manager Kim Greer carried out. Greer stated in writing that the pay deduction was because Ms. Plummer "requested a reasonable accommodation."

43. In November 2013, Ms. Plummer found her personnel records were not kept in compliance with the law because her file was missing documents.

44. Also in November 2013, Ms. Plummer found that Curl had instructed finance department staff to suppress truthful information to the public about CAL card use. Ms. Plummer refused to suppress the misuse of government funds.

45. On November 4, 2013, Ms. Plummer resigned as a signatory for the CAL Card because she could not "knowingly be a party to or condone improper activity."

46. Also in this time period, Ms. Plummer informed City of Richmond Council Member Tom Butt that City Council members, including Nat Bates and Corky Booze, had taken trips to China under the auspices of the Port of Richmond. These trips were paid for in cash without Council approval, and it appears that the money was not properly accounted for.

47. Ms. Plummer informed Tom Butt that Lindsay was also invited to these trips, and received cash to do so, but never went on the trips. It appears that this cash was not returned to the Port or the City and thus not properly accounted for.

48. On November 27, 2013, shortly after these revelations were made public, the City issued Ms. Plummer a Notice of Unpaid Suspension for one week. The City charged

Ms. Plummer with "insubordination" and "unprofessional" emails. The City's Suspension letter says that the "insubordination" and "unprofessionalism" are because, in those emails, Ms. Plummer refused to sign off on CAL Card expenses, and refused to lie to the federal grantor. Ms. Plummer's emails also reported the City's violation of wage and hour laws.

49. In December 2013, Ms. Plummer informed City Councilmember Tom Butt that the Richmond Housing Authority was allowing staff to be paid twice without reimbursement.

50. As of January 2014, Ms. Plummer had reminded Curl and her other Library superiors about the City's Library Vendor Resolution numerous times. The City's Library Vendor Resolution requires City Council approval for library procurement exceeding $10,000 to a single vendor.

51. In response to Ms. Plummer's reminders, Curl sent an email to all Ms. Plummer's Library superiors admonishing Ms. Plummer for reminding them.

52. Following this, Ms. Plummer alerted Curl that Library vendors were sending her many emails about unpaid bills.

53. In January 2014, Curl directed Ms. Plummer to violate local laws by sending unlawful partial payments to vendors without City Council approval. Ms. Plummer notified Curl, Lindsay, and City Attorney Goodmiller that this was a violation of the law, and refused to do it.

54. On January 17, 2014, Curl temporarily gave Ms. Plummer her long withheld job duties back. Curl required her to complete the severely delayed vendor resolutions, accrued over one year, in three days.

55. On April 17, 2014, Ms. Plummer was made aware that Curl's freezing of Ms. Plummer's job duties had resulted in a complete financial breakdown in Library services. Curl had stripped the task of library procurement and invoice processing from Ms. Plummer, and assigned those tasks to her Executive Secretary.

56. Curl's Executive Secretary, untrained for these tasks and overwhelmed, broke down in tears at a staff meeting with Ms. Plummer, Curl, and others. At this meeting, it came out that Curl had failed to ensure City Council approval to pay even more library expenses for almost the entire 2013-2014 fiscal year.

57. This failure resulted in no new children's materials of any kind; no new magazines, DVDs, adult/reference books; no new books for the Bookmobile; no new books for two library branches; a forfeit of $60,000 in the book budget because the money was going unused; at least $80,000 in unpaid vendor bills; and nonpayment of $15,000 in membership dues to the Pacific Library Partnership consortium; all for over 10 months and counting.

58. Again Curl assigned the overdue work to Ms. Plummer, but denied her the use of the automatic "batch" payment system.

59. Ms. Plummer reported the many unpaid invoices, and Curl's disallowance of her use of the automatic "batch" payment, to the City's Finance Director.

60. On May 6, 2014, Curl issued a Letter of Reprimand to Ms. Plummer for this email to the Finance Director.

61. On May 21, 2014, the federal Institute of Museum and Library Services ("IMLS") sent Curl and Ms. Plummer notice that the Library would be cut off from federal funding due to delinquent reporting. Ms. Plummer had not been aware of the issue due to Curl's freezing her out of her job, though she had inquired about it in the

*Plummer v. City of Richmond, et al.*, No.
Complaint – 10

past without response.

62. Ms. Plummer sent the IMLS email to the City Council.

63. One week later, on May 28, 2014, Ms. Plummer was notified of transfer out of the Library. On June 4th, 2014, Ms. Plummer was transferred out.

64. Ms. Plummer brought her reasonable belief of illegal acts to her chain of command, and then outside her chain of command to the City Manager, City Attorney, City Council, the public, the Federal Bureau of Investigation, the Contra Costa County Grand Jury, the Contra Costa District Attorney's Office, the State Attorney General's Office, and the Federal Government's Office of the Inspector General. She refused unlawful orders several times. She reported widespread and systemic corruption.

65. Invariably, following each protected disclosure, the City took adverse action against Ms. Plummer, including multiple transfers, a suspension, and denial of a recommended promotion, while promoting less qualified employees. The City has docked Ms. Plummer's pay several times, and denied her leave salary and benefits. These adverse actions have chilled Ms. Plummer's speech, and the speech of other employees.

66. Ms. Plummer has made a good faith effort to exhaust all internal procedures through official channels, and all available administrative remedies. Ms. Plummer has filed a Government Torts Claim Act ("GTCA") with the local agency of the City Clerk's Office. She filed the GTCA complaint within 60 days of the acts that were the subject of her complaints, and under the penalty of perjury.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

67. Plaintiff has exhausted all administrative remedies by filing a Government Torts Claim Act claim with the City of Richmond on March 27, 2014. The City denied

---

*Plummer v. City of Richmond, et al.*, No.
Complaint – 11

that claim on April 2, 2014.

**FIRST CLAIM - VIOLATION OF FREE SPEECH RIGHTS**
**(against defendants City of Richmond, Bill Lindsay, Katy Curl, Leslie Knight, and Lisa Stephenson in their individual capacities)**
(42 U.S.C. § 1983)

68.  Plaintiff incorporates by reference paragraphs 1 through 67 above as though fully set forth herein.

69.  By virtue of the foregoing, defendant City of Richmond's highest officials, who have final policymaking authority under state law, took action that caused deprivation of free speech rights under the Constitution of the United States.

70.  Defendants Bill Lindsay, Katy Curl, Leslie Knight, and Lisa Stephenson, acting under color of state law, wrongfully deprived plaintiff of her free speech rights guaranteed under the Constitution of the United States by participating in adverse employment actions against plaintiff in retaliation for her speech addressing issues of public concern and refusing to participate in unlawful conduct by defendants.

**SECOND CLAIM - VIOLATION OF**
**CALIFORNIA GOVERNMENT CODE § 53296,** *et seq.*
**(against defendants Bill Lindsay, Katy Curl,**
**Leslie Knight, and Lisa Stephenson)**
(Cal. Govt. Code § 53296 *et seq.*)

71.  Plaintiff incorporates by reference paragraphs 1 through 70 above as though fully set forth herein.

72.  By virtue of the foregoing, defendants Bill Lindsay, Leslie Knight, Katy Curl, and Lisa Stephenson are liable for their actions as local agency officers, managers, and supervisors who retaliated against plaintiff for filing a complaint with the local agency reporting gross mismanagement, a significant waste of funds, and an abuse of authority.

**THIRD CLAIM – VIOLATION OF**
**CALIFORNIA LABOR CODE § 1102.5**
**(against defendant City of Richmond)**
(Cal. Lab. Code § 1102.5)

73.  Plaintiff incorporates by reference paragraphs 1 through 72 above as though fully set forth herein.

---

*Plummer v. City of Richmond, et al.*, No.
Complaint – 12

74.     By virtue of the foregoing, defendant City of Richmond retaliated against plaintiff for disclosing what she reasonably believed were violations of federal, state, and municipal laws to her supervisors and others, and for refusing to take part in unlawful activities in violation of Labor Code § 1102.5.

**FOURTH CLAIM – VIOLATION OF**
**CALIFORNIA FALSE CLAIMS ACT**
**(against defendant City of Richmond)**
(Cal. Gov. Code § 12653)

75.     Plaintiff incorporates by reference paragraphs 1 through 74 above as though fully set forth herein.

76.     By virtue of the foregoing, defendant City of Richmond knew plaintiff engaged in activity protected under the statute, and then retaliated against plaintiff because she engaged in that protected activity.

**DAMAGES**

77.     As a result of the actions of defendants, plaintiff has been injured and has suffered damages as follows:

   a.  She has lost compensation and other employment-related benefits to which she has been entitled and will lose such compensation and benefits in the future;

   b.  She has suffered from emotional distress, embarrassment and humiliation, and has suffered damage to her professional reputation and standing;

   c.  She has incurred out-of-pocket expenses for health care benefits.

**PUNITIVE DAMAGES**

78.     In taking the actions alleged above, defendants Bill Lindsay, Leslie Knight, Katy Curl, and Lisa Stephenson engaged in the conduct alleged herein with malice, oppression, and reckless disregard of plaintiff's right to be free of retaliation for engaging in protected free speech, and to report gross mismanagement and abuse. Accordingly, plaintiff is entitled to punitive damages against defendants Bill Lindsay, Leslie Knight, Katy Curl, and Lisa Stephenson in this action.

WHEREFORE, plaintiff requests that this Court grant her relief as follows:

(1) Injunctive relief to require defendant City of Richmond to reinstate plaintiff together with all pay, benefits, seniority, and emoluments of that position; and treat her without retaliation;

(2) Injunctive relief to require City of Richmond to cease retaliation against employees who engage in protective activity;

(3) Compensatory damages for past and future lost wages and benefits, in an amount to be determined;

(4) Interest at the legal rate;

(5) General damages for emotional distress, pain and suffering, in an amount to be determined;

(6) Special damages for out-of-pocket expenses;

(7) Punitive damages, in an amount to be determined;

(8) Attorney fees;

(9) Costs of suit; and

(10) Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

In accordance with the Federal Rules of Civil Procedure, Rule 38(b), and Northern District Local Rule 3-6(a), Stacie Plummer hereby demands a jury trial.

Dated: September 2, 2014

SIEGEL & YEE

By: ___/s/ Dan Siegel____
　　　Dan Siegel

Attorneys for Plaintiff
STACIE PLUMMER